## STEVE GUINN v. STATE.

No. A-6257. Opinion Filed April 23, 1928.
(266 Pac. 484.)

E. E. Ammons, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, P. J. The plaintiff in error, herein referred to as defendant, was convicted of manslaughter in the first degree on an information filed in the district court of McIntosh county, wherein it was charged that he (Steve Guinn), in said county on the 16th day of October, 1925, did kill and murder one Garfield Youngblood by shooting him with a pistol. Motion for new trial was duly filed and overruled and in accordance with the verdict of the jury the court rendered judgment and sentenced defendant to imprisonment in the penitentiary for a term of four years. From the judgment he appeals.

Neither in the petition in error nor in the brief filed is any complaint made of the instructions given or of any ruling of the court in the admission or rejection of testi-

mony. The only ground urged for a reversal is that the verdict is not sustained by sufficient evidence, and that it is contrary to law.

It appears that defendant, Steve Guinn, resided on a farm about 7 miles west of Checotah. The deceased, Garfield Youngblood, together with others who were working with him, was engaged in picking cotton in that neighborhood. Defendant had about 40 acres of cotton and the deceased agreed to have his picking force pick defendant's cotton, provided defendant would give a dance for the party. This defendant agreed to do, and it was at this dance that the killing occurred.

The deceased went to the dance armed, as did also his son, Otis Youngblood. While the party was in progress, a pistol fell from the clothes of Otis Youngblood. Defendant picked up the pistol and refused to return it to Youngblood. This was the beginning of a series of difficulties between defendant and the deceased, which culminated in the shooting of Garfield Youngblood by defendant, while he was seated in his Ford car in the act of leaving the defendant's premises, about 10 o'clock at night. The bullet entered the left side of his head, near the ear, and came out on the right side of his head. The body of the deceased remained in the car until the sheriff arrived.

A. F. Downs testified that he and his daughter, Carrie, were working for the defendant at that time; that a six-shooter fell on the floor, and defendant picked it up, put it in his belt, and had a dispute with Otis Youngblood, and then defendant and the deceased had a fight; that defendant had a gun, a big 45, and the deceased had a gun; that, assisted by others, he separated the parties; that shortly afterwards another fight started and the deceased hit defendant with his fist in the mouth; defendant then went out the front door, the deceased went and got in his car; then he saw defendant walk towards the corner of the porch and in the light of the window he saw the defendant hold-

ing a six-shooter and the gun fired; that witness walked out to the car, and the blood was dropping from the head of the deceased on the running board; that shortly afterwards defendant came out to the car with his gun in his hand, and said, "Is the man dead; who shot him? show me the son of a bitch that shot the man;" then defendant went back to the house and witness went back; defendant gave witness his gun; it had two shells in it and four cartridges, and witness took the shells and loads from the gun; that two or three other persons were present at the time.

E. A. Kelly, sheriff, testified that he was called to defendant's house to investigate a killing and found a Ford car in front of the porch with a dead man on the seat behind the steering wheel; he had a gunshot wound in front of the left ear, the bullet coming out behind the right ear; that he did not find any guns or weapons of any kind about the body or in the car; that he asked defendant whether or not he fired the shot that killed this man, and defendant said that he did not; that some fellow had knocked him down near the porch and he was there on his hands and knees when the shot fired; that later after his arrest he talked to defendant at the jail and he denied firing the shot that killed Garfield Youngblood.

Carrie Downs testified that she was standing in the door and saw defendant fire two shots and the second shot killed Garfield Youngblood.

For the defense, Mrs. Steve Guinn, wife of defendant, testified that the deceased came into the room while she was changing her clothes and put his arms around her neck, and she said, "Gar, get out of here and do it now," but she didn't tell her husband anything about this; that the deceased had two guns and she tried to get him to put the guns up, and he said he would not give them up; that during the dance Otis Youngblood dropped a gun and her husband picked the gun up, and said, "I am the man of the

house, and this boy has danced with a loaded six-shooter, and it could have went off when it hit the floor;" and Otis said, "I am a fighting son of a bitch; give me my gun;" and her husband pushed him back; that the deceased was playing for the dance at the time, and he stopped and started after her husband with his pistol, and she ran between them; then her husband reached over the window and got his gun and the deceased wrenched it from him, threw it to his son, then hit her husband in the mouth, and her husband ran out the door and hollered for his gun, and she threw his gun out in the yard; then two shots were fired in rapid succession; in 15 or 20 minutes her husband came into the house, and Mr. Downs said, "Give me that gun and I will take the shells out of it and bury it somewhere," and her husband gave the gun to Mr. Downs.

As a witness in his own behalf, defendant testified that he had a 45 Colts, which was over the west window in the south room; that before the dance they all took several drinks together out of a two-gallon jug that contained whisky beer; that the deceased was playing the fiddle and his son, Otis, was dancing and an automatic pistol dropped out of his pocket; that he picked it up, and said, "Gentlemen, nobody ought to dance with a pistol on; it might have went off and killed some woman or baby or somebody in the house." Then the deceased jumped up, and said, "You little bull-dozing son of a bitch, give my boy his pistol;" that Otis was awful drunk; he could hardly stand up; that the deceased had a pistol in his hand and called him everything under Heaven, and said that he was running that dance; that his wife got between them, and the deceased reached over and hit him on the head with a pistol; then he reached up and took his gun from over the window, and the deceased wrenched the gun out of his hand and threw it over to his son Otis; then hit witness in the mouth with a pair of nucks, knocking some of his teeth out; then witness ran out, followed by the deceased, who kicked him and shot at him; that witness then found his gun out in the

yard on the north side of the porch and he fired the shot; that he fired the shot because he thought the deceased was going to kill him.

Defendant admitted that he first denied having anything to do with the killing, and that he made the statement above set out at the time he appeared upon the scene of the killing after he had committed the homicide and gave as his reason for so doing that was afraid that, if he admitted the killing, somebody in the crowd would then kill him.

It is well settled in this state that conflicts in the testimony as to whether defendant or the deceased was the assailant are settled by the jury. Under the evidence in this case the jury were warranted in finding defendant guilty of manslaughter in the first degree, and it is not within our province to weigh the evidence, and there is nothing in the record which would warrant us in believing that the jury arrived at its verdict from passion or prejudice, instead of according to the truth or falsity of the evidence as they found it.

It follows that the judgment appealed from must be affirmed.

EDWARDS and DAVENPORT, JJ., concur.